UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re OPTIONABLE SECURITIES LITIGATION | **FILED ELECTRONICALLY**<br><br>07 Civ. 3753 (LAK) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE VLK GROUP FOR (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL**

I.    **INTRODUCTION**

Presently pending in this District are several consolidated securities class actions (the "Consolidated Actions") brought pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") and/or Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.[1]

Robert Viccione ("Viccione"), James Lemsky ("Lemsky") and Neal H. Klein ("Klein")(collectively, the "VLK Group") suffered losses of approximately $236,075 as a result of the purchase of Optionable, Inc. ("Optionable") common stock during the period between May 6, 2005 and May 14, 2007, and respectfully submit this Memorandum of Law in support of the VLK Group's motion to: (i) be appointed Lead Plaintiff; and (ii) approve its choice of Lead Counsel. *See* Declaration of Jeffrey P. Campisi, dated July 10, 2007, Exhibit A, for Declaration of each member of the VLK Group; and Exhibit B for a chart of estimated losses sustained by each member of the VLK Group in Optionable common stock (hereinafter "Campisi Decl. Ex. ___").

The VLK Group believes that it has the largest financial interest of any movant. As set forth below, the VLK Group requests appointment as Lead Plaintiff and requests appointment of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Lead Counsel.

II.   **PROCEDURAL BACKGROUND**

On May 11, 2007, the first securities class action, *Fleiss v. Optionable, et al.* (07cv3753) (S.D.N.Y.), was commenced on behalf of shareholders who purchased shares of

---

[1] On July 20, 2007, the Court issued an Order consolidating several related securities class actions under the caption *In re Optionable Securities Litigation*, 07 Civ. 3753 (LAK) (Docket Entry No. 13).

1

Optionable in connection with its Initial Public Offering ("IPO") in or about May 9, 2005, or who purchased shares thereafter in the open market.[2] The complaint alleged that, in violation of the Securities Act, Optionable and certain of its officers and/or directors made materially false and misleading statements in the Registration Statement and Prospectus issued in connection with the IPO. Subsequently filed cases asserted claims under the Securities Exchange Act of 1934 (the "Exchange Act") alleging class periods covering the period May 6, 2005 through May 14, 2007.[3] *See e.g.,* Plaintiff's complaint filed in *Manowitz v. Optionable, et al.* 07 Civ. 3884 (alleging claims under the Exchange Act), attached as Ex. D to the Campisi Decl.

On May 11, 2007, the plaintiff in *Fleiss* published a notice to class members with *Market Wire* (the "Notice"), as required by the Private Securities Litigation Reform Act (the "PSLRA"). Campisi Decl., Ex. E. The Notice advised purchasers of Optionable common stock of the existence of a lawsuit and the nature of defendants' statements, omissions and conduct which allegedly artificially inflated the price of Optionable. The Notice further advised potential class members of their right to move the Court to be appointed Lead Plaintiff within 60 days.

The VLK Group now moves this Court to be appointed as the Lead Plaintiff in these Consolidated Actions.

### III.  SUMMARY OF THE CONSOLIDATED ACTIONS

Optionable purports to be a provider of natural gas and other energy derivatives trading and brokerage services. It has been alleged that throughout the Class Period, Optionable issued false statements and made material omissions regarding its business fundamentals and financial results. While touting its continued success during the Class Period, Defendants failed to disclose

---

[2] The plaintiff in *Fleiss* did not allege a date on which the Class Period ends. A copy of the *Fleiss* Complaint is attached to Campisi Decl. Ex. C.
[3] At least two of the Consolidated Actions allege claims on behalf of purchasers of the publicly traded securities of Optionable. *See Glaubach v. Optionable, et al.*, Civ. 07-4085; *Bock v. Optionable, et al.*, Civ. 07-5948.

the enormous dependence it had on its largest client, the Bank of Montreal ("BMO"), and that Optionable improperly concealed material losses incurred by BMO in connection with trades BMO transacted through Optionable.

On April 27, 2007, BMO disclosed that it had lost between $300 to $400 million in trades executed through Optionable. On that day, the price of Optionable stock declined from a previous day closing price of $8.29 per share, to close at $5.56 per share, a decline of $2.73 per share, or 33%, on heavier than usual volume.

On May 2, 2007, Optionable disclosed that Defendant Mark Nordlicht, who served as Chairman and Director of Optionable during the Class Period, resigned from both positions. On May 2, 2007, Optionable shares declined from a price of $5.34 per share at the close of trading on May 1, 2007, to close at $4.82 per share, a decline of $0.52 per share or approximately 10%. On May 8, 2007, after the close of trading, BMO announced that it was "suspending all of its business relationships" with Optionable and "all derivatives trading through that firm, pending the results of a full external review which is ongoing." BMO also announced that two of its commodity trading professionals were on leave pending the results of the external review.

On May 9, 2007, Optionable shares declined from a close on May 8, 2007 of $4.64 per share, to close at $2.61 per share, a decline of $1.83 per share or approximately 39% on heavier than usual volume. On May 10, 2007, it was disclosed that Deloitte & Touche LLP ("Deloitte") had conducted an audit of, and prepared a report in connection with, the trades BMO had conducted with Optionable. According to *Bloomberg,* the Deloitte report stated that there had been "serious mismarkings" of natural gas options and that the "auditors had never seen such a wide discrepancy between the pricing in the bank's portfolio and their market value." On May 10, 2007, Optionable shares declined from a close on May 9, 2007 of $2.81 per share, to close at $0.84 per share, a decline of $1.96 per share or approximately 70%.

3

On May 14, 2007, Optionable disclosed the "resignation" of its Vice Chairman, CEO and Director, Defendant Kevin Cassidy. It was also disclosed that the New York Mercantile Exchange, which acquired a 19% stake in the Company on April 19, 2007, was concerned about recent developments at Optionable and was quitting its seat on the board of the Company.

On May 14, 2007, Optionable shares declined from a close of $1.01 per share on May 11, 2007, to close at $0.42 per share, a decline of 58% on heavier than usual volume.

It has also been alleged that during the Class Period, certain Defendants sold artificially inflated Optionable shares for proceeds of over $28 million.

## IV.   ARGUMENT

### A.   The VLK Group Should Be Appointed Lead Plaintiff

#### 1.   The VLK Group Believes It Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA sets forth the procedure for the selection of lead plaintiff in each private action arising under the securities laws that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. *See* Section 27(c)(1) of the Securities Act; Section 21D(c)(1) of the Exchange Act. The PSLRA provides that within twenty days after the date on which a class action is filed:

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

*See* Section 27(a)(3)(A)(i) of the Securities Act; Section 21D(a)(3)(A)(i) of the Exchange Act.

Further, the PSLRA directs the Court to consider any motions by a member or members of the proposed class to serve as Lead Plaintiff(s) in response to any such notice within ninety days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. Furthermore, under the PSLRA, the court "shall" appoint the most adequate plaintiff, and is to presume that plaintiff is "the person, *or group of persons*", that:

> (aa)   has either filed the complaint or made a motion in response to a notice…;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 27(a)(3)(B) of the Securities Act; Section 21D(a)(3)(B) of the Exchange Act; *see also Barnet v. Elan Corp, PLC*, 236 F.R.D. 158, 162-63 (S.D.N.Y. 2005) (appointing group of investors as lead plaintiff, noting that "there can be no doubt that the PSLRA contemplates that *some* "groups" can serve as lead plaintiff -- indeed, the plain language of the statute provides for this outcome.") (Emphasis in original and citation omitted); *Weltz v. Lee*, 199 F.R.D. 129, 134 (S.D.N.Y. 2001) (appointing group of investors as lead plaintiff).

Thus, the statutory language explicitly provides that a member of the class, or a person or group of persons with "the largest financial interest" is entitled to presumptive appointment as lead plaintiff. The VLK Group, with estimated losses of $236,075, believes it has the largest financial interest of any lead plaintiff movant and is presumptively entitled to appointment as the Lead Plaintiff.

### 2. The VLK Group Is Qualified Under Rule 23

The PSLRA provides that, at the outset of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* Section 27(a)(3)(B)(iii)(I)(cc) of the Securities Act; Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act. With respect to the qualifications of the class representative, Rule 23(a) requires generally that the claims of the representative be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). As detailed below, the VLK Group satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as Lead Plaintiff.

#### a. The VLK Group's Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when each class member's claim arises from the same course of conduct, even when minor distinctions exist. The VLK Group's claims are typical of the claims of the members of the proposed Class. Each member of the VLK Group and all other members of the proposed class purchased the publicly traded securities of Optionable at prices inflated by defendants' misrepresentations and omissions and were damaged thereby. Because the VLK Group's claims arise from the same course of conduct that caused other members of the class to acquire Optionable securities at artificially inflated prices, typicality is satisfied.

#### b. The VLK Group Will Fairly and Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). Generally, "adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other

members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.* 222 F.3d 52, 60 (2d Cir. 2000) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Here, lead plaintiff movants' interests are clearly aligned with the members of the Class, and there is no evidence of any antagonism between the members of the VLK Group and the interests of the Class. The VLK Group shares numerous common questions of law and fact with the members of the Class, and its claims are typical of the Class. Moreover, each member has demonstrated that he is willing to serve as an advocate on behalf of the Class. Specifically, Viccione, Lemsky and Klein have each signed declarations stating that each is willing to serve as a representative of the class, including providing testimony at a deposition or trial. Campisi Decl., Ex. A. Moreover, prior to the filing of this motion, the members of the VLK Group met telephonically and agreed to file this motion jointly. Thus, the close alignment of interests between the VLK Group, combined with its strong desire to prosecute these actions on behalf of the Class, militates in favor of granting the instant motion.

### B. This Court Should Approve the VLK Group's Choice of Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to this Court's approval. *See* Section 27(a)(3)(B)(v) of the Securities Act; Section 21D(a)(3)(B)(v) of the Exchange Act. Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to protect the interests of the class. The VLK Group has selected counsel highly experienced in prosecuting securities class actions. *See* Campisi Decl. Ex. F. The VLK Group has retained the law firm of Kaplan Fox to serve as Lead Counsel. Kaplan Fox has extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors. *Id.*

## V. CONCLUSION

For the above reasons, the VLK Group respectfully requests that the Court: (1) appoint the VLK Group as Lead Plaintiff in the Consolidated Actions; and (2) approve its choice of Lead Counsel.

DATED: July 10, 2007

Respectfully submitted,

KAPLAN FOX & KILSHEIMER LLP

By: ___s/ Jeffrey P. Campisi___

Frederic S. Fox
Joel B. Strauss
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Attorneys for Lead Plaintiff Movants Robert Viccione, James Lemsky and Neal H. Klein*

## CERTIFICATE OF SERVICE

I, Jeffrey P. Campisi, declare that, on July 10, 2007, I caused true and correct copies of the following:

- Notice of Motion and Motion of The VLK Group for: (1) Appointment as Lead Plaintiff; and (2) Approval of Lead Plaintiff's Choice of Lead Counsel;

- Memorandum of Law in Support of the Motion of The VLK Group for: (1) Appointment as Lead Plaintiff; and (2) Approval of Lead Plaintiff's Choice of Lead Counsel; and

- Declaration of Jeffrey P. Campisi in Support of the Motion of The VLK Group for: (1) Appointment as Lead Plaintiff; and (2) Approval of Lead Plaintiff's Choice of Lead Counsel;

to be served via the Court's ECF system to all counsel of record.

                                                                                */s/ Jeffrey P. Campisi*
                                                                                   Jeffrey P. Campisi